# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JOSHUA JARRETT, JESSICA JARRETT

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 3:21-cv-00419

District Judge William L. Campbell Jr.

Magistrate Judge Alistair E. Newbern

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

    A.   Josh Jarrett is a small business owner who creates new Tezos tokens. ....... 2

    B.   The Jarretts properly establish subject matter jurisdiction......................... 2

    C.   The government offers to settle the case, and the Jarretts  reject the offer. 3

ARGUMENT ...................................................................................................... 5

I.   The Government's Unaccepted Offer to Settle Does Not Moot the Jarretts'
Case. ........................................................................................................... 6

    A.   Under *Campbell-Ewald*, an unaccepted settlement offer cannot moot an
Article III controversy.................................................................... 6

    B.   Under *Campbell-Ewald*, the government's unaccepted offer to settle does
not moot the Jarretts' case. ............................................................ 8

II.   This Court Retains Jurisdiction Over the Jarretts' Claim Because The Claim Is
Capable of Repetition and One of Public Importance. ...................................... 12

III.  The Jarretts Have Not Been Made Whole Solely By An Offer To Repay The
Refund; Prospective Relief Remains Available. .................................................. 18

CONCLUSION ................................................................................................... 21

Case 3:21-cv-00419   Document 51   Filed 03/14/22   Page 2 of 25 PageID #: 626

## INTRODUCTION

The Jarretts filed this case because they want a judicial resolution of their rights—specifically, a ruling that, under a proper reading of the tax code, tokens created through staking are not taxable income. That ruling not only would require a refund for the taxes they paid in 2019, but also would prevent the IRS from penalizing them for making similar claims on future tax returns. And if affirmed by the Sixth Circuit or enshrined in a declaration or injunction, it would protect the Jarretts indefinitely.

The government does not want the Jarretts to have that ruling. It tried to moot the case by offering them a refund of their 2019 taxes. When the Jarretts declined the offer, the government unilaterally mailed them a check anyway.

That strategy does not work, both before 2016 and certainly afterward. In 2016, the Supreme Court held in *Campbell-Ewald Co. v. Gomez* that plaintiffs can continue litigating a case to judgment, even if the defendant offers them every penny they were asking for. *Campbell-Ewald* is squarely on point: its holding and all of its reasoning apply to the Jarretts, including that a defendant cannot put itself "in the driver's seat" and "avoid a potential adverse decision" by simply offering to settle.

Further, circuit precedent predating *Campbell-Ewald* recognizes that taxpayers like the Jarretts have the right to reject a proffered tax refund and obtain a judicial determination. And even further, forward-looking relief remains available here—relief that the government's maneuver doesn't even arguably moot.

The government's motion to dismiss should be denied.

# FACTUAL BACKGROUND

### A.   Josh Jarrett is a small business owner who creates new Tezos tokens.

Joshua Jarrett owns and runs Quantify Fitness, a small business in Nashville, Tennessee. Jarret Decl. ¶ 2. He owns Tezos tokens and intends to use Tezos tokens in his business. Jarrett Decl. ¶ 3. In 2019, using a process known as "staking," Josh employed both his Tezos tokens and his computing power to create 8,876 new tokens on the Tezos public blockchain. Jarrett Decl. ¶¶ 4, 6. He did not sell, exchange, or otherwise dispose of these tokens in 2019. *Id.* Josh has created new Tezos tokens through an identical staking process in every year since 2019, and he intends to continue doing so. Jarrett Decl. ¶¶ 4, 5.

### B.   The Jarretts properly establish subject matter jurisdiction.

In 2020, Josh and his wife, Jessica, filed an amended return with the Internal Revenue Service, along with an exhaustive factual record and extensive legal reasoning, seeking a refund of the taxes they paid on the tokens Josh created. Jarrett Decl. ¶ 7. The IRS responded with silence. It did not issue a refund or respond to the Jarretts' position. Jarrett Decl. ¶ 8.

After waiting the six months required by 26 U.S.C. § 7422, the Jarretts filed this refund suit in May 2021, seeking a judicial determination that the creation of new tokens is not taxable income. Dkt. 1 (Compl.). The Jarretts also sought whatever relief that their allegations and the broader nature of the controversy would support. Compl., Prayer ¶¶ A-D. In August 2021, the government answered the complaint (without contesting subject matter jurisdiction). Dkt. 25. Notably, the

government denied the Jarretts' claim that tokens created through staking are not taxable income. *See, e.g.*, *id.* ¶¶ 5, 14. This Court set the deadline to amend pleadings as December 15, 2021. *See* Dkt. 34.

### C. The government offers to settle the case, and the Jarretts reject the offer.

On December 21, one week after the amended-pleading deadline, the government wrote a letter stating that the IRS had "been authorized and directed to schedule an overpayment of $3,793, plus statutory interest as provided by law for the 2019 tax year." Forst Decl., Ex. A. The letter did not give the government's reasons for offering a refund. *See id.* On January 5, the government sent the Jarretts a proposed stipulated dismissal of this action. Forst Decl. ¶ 3. Like the letter, the draft stipulation did not provide a rationale for the proffered refund. *Id.* In subsequent conversations with the Jarretts' counsel, the government was not willing to stipulate to language regarding the correctness of the Jarretts' position. Forst Decl. ¶ 4. The government also made clear that it had not yet mailed—or even processed—the proffered refund. *Id.*

The Jarretts rejected the proffered refund on January 25, before the IRS had processed it or the government had mailed it. Jarret Decl. ¶ 10; Forst Decl., ¶ 5; Ex. B. In the emailed letter rejecting the refund offer, the Jarretts explained that the issue remained unsettled for both the year at issue and subsequent years, and so the Jarretts "would remain at risk even if they accepted the proffered refund."

3

Forst Decl., Ex. B.  In a subsequent telephone conversation with the Jarretts' counsel, the government again refused to provide any explanation for the offer.  Forst Decl. ¶ 6.

Shortly after the Jarretts rejected the government's offer, the government overnighted a letter to the Jarretts' counsel containing a check for $4001.83 and an IRS Form 1331-B dated January 28, 2022.  Forst Decl. ¶ 7.  The Form 1331-B, dated three days after the government received the Jarretts' rejection letter, states that the Jarretts' check was "made in accordance with the concession authorized in Jarrett v. United States filed on May 26, 2021."  *Id.*

Consistent with their rejection letter, the Jarretts have not cashed, and do not intend to cash, the refund check.  Jarrett Decl. ¶ 12.  The check remains in the possession of their counsel.  Forst Decl. ¶ 8. The Jarretts instead are exercising their right to continue litigating until "the court . . . enters *judgment* for [them] in that amount."  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (emphasis added).  Josh has continued to create new Tezos tokens and plans to keep doing so, *see* Jarrett Decl. ¶¶ 4, 5, and he and his wife will remain at risk if he does not obtain the judgment he sought when he filed his lawsuit, Jarrett Decl. ¶ 10.[1]

---

[1] The Jarretts are introducing these facts via declarations and exhibits, rather than seeking leave to amend their complaint.  Before filing this brief, the Jarretts consulted with the government about a motion to amend the complaint.  The government opposed such a motion, stating that "[t]here is no reason plaintiffs need to amend the complaint" because "this is not a facial challenge to subject matter jurisdiction but a factual one."  The Jarretts agree.  If the Court disagrees, then the Jarretts respectfully ask for leave to amend their complaint.  The allegedly case-mooting events occurred after the Jarretts filed their complaint, and a dismissal would serve no purpose because the Jarretts could simply file a brand-new complaint.

## ARGUMENT

The government claims that this case is moot. Right off the bat the government does not define mootness properly. It states that mootness is "'the doctrine of standing set in a time frame.'" Mem. (Dkt. 42) at 2 (quoting *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 190 (2000)). But this very case goes on to explain that such a description of mootness cannot withstand "[c]areful reflection." *Friends of the Earth*, 528 U.S. at 190.

Indeed, it is easier to prove that a case isn't moot than to prove standing; a prospect of future harm that would be "too speculative to support standing" could be "not too speculative to overcome mootness." *Id.* Numerous doctrines, such as voluntary cessation, capable of repetition yet evading review, and others, protect plaintiffs who had standing at the beginning to keep seeking the judgment they sued for. *See id.* at 190-91. And it is *the government* who has the heavy burden of proving that this case is moot. *See Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221-22 (2000).

The government has not carried its burden here for three main reasons. Under the Supreme Court's decision in *Campbell-Ewald*, the government's offer to refund the Jarretts' taxes cannot moot the case because the Jarretts timely rejected it. The important, purely legal issue in this case is also capable of repetition yet evading review. And even if the parties' dispute over the Jarretts' 2019 taxes were moot, the Jarretts can still seek declaratory and injunctive relief for future tax years.

This Court should deny the government's motion.

# I. The Government's Unaccepted Offer to Settle Does Not Moot the Jarretts' Case.

## A. Under *Campbell-Ewald*, an unaccepted settlement offer cannot moot an Article III controversy.

"[A]n unaccepted offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald*, 577 U.S. at 165. This recent Supreme Court decision is squarely on point. The government neither discusses *Campbell-Ewald* nor cites a case postdating it where a proffered refund mooted a case. *Campbell-Ewald* mandates the denial of the government's motion.

In *Campbell-Ewald*, a putative class representative sued a government contractor for damages and an injunction. *Id.* at 157. The defendant filed an offer of judgment under Fed. R. Civ. P. 68, in which it committed to satisfying the plaintiff's individual damages claim in full, and to an injunction barring it from further violations of the law at issue. *Id.* at 158. The defendant continued, however, to "den[y] liability and the allegations made in the complaint." *Id.* The plaintiff did not accept the offer of judgment. *Id.* The defendant moved to dismiss under Rule 12(b)(1), arguing that the case had become moot. *Id.*

The Supreme Court disagreed. Dismissal would "place the defendant in the driver's seat," it reasoned, by allowing it to avoid adverse decisions and evade judicial review simply by making settlement offers. *Id.* at 165. Accordingly, the Court concluded that unaccepted offers of judgment leave the parties exactly where they were before the offer:

> When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does

6

the court's ability to grant her relief. . . . So assuming the case was live before—because the plaintiff had a stake and the court could grant relief—the litigation carries on, unmooted.

*Campbell-Ewald*, 577 U.S. at 162 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 80-81 (2013) (Kagan, J., dissenting)) (cleaned up). With the offer rejected, "and the defendant's continuing denial of liability, adversity between the parties persists." *Id.* at 156.

In applying *Campbell-Ewald*, the Sixth Circuit echoed the breadth of the Supreme Court's holding. In *Conway v. Portfolio Recovery Associates, LLC*, the court of appeals overturned a district court's dismissal of a case, holding: "The Supreme Court has now made clear that an unaccepted offer of settlement or judgment . . . generally does not moot a case, *even if the offer would fully satisfy the plaintiff's demands for relief.*" 840 F.3d 333, 335 (6th Cir. 2016) (emphasis added).

The Supreme Court did not limit its holding in *Campbell-Ewald* to cases where a plaintiff intends to certify a class. The Court could have distinguished between the individual claims and the putative class claims—but did not. The Court held that the plaintiff's *individual* claim is not moot and thus the litigation may continue. That he was a putative class representative was of no import. Indeed, the Court framed the question broadly: "whether an unaccepted offer can moot a plaintiff's claims, thereby depriving federal courts of Article III jurisdiction." *Campbell-Ewald*, 577 U.S. at 160. And the Court noted that it was resolving a circuit split, citing at least one decision that was not a putative class action. *See id.* at 160 (citing *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 368 (4th Cir. 2012)). The

7

Court framed its holding broadly as well: "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case, so the District Court retained jurisdiction to adjudicate [the plaintiff's] complaint. That ruling suffices to decide this case." *Campbell-Ewald*, 577 U.S. at 165. As discussed below, that ruling also suffices to decide this motion. *See also Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 8223066, at *4 n.3 (N.D. Tex. Sept. 16, 2019) ("Although the *Campbell-Ewald* decision involved a class action under Federal Rule of Civil Procedure 23, the portion of its decision concerning the effect of an unaccepted contract offer is not limited to class actions.").

### B. Under *Campbell-Ewald*, the government's unaccepted offer to settle does not moot the Jarretts' case.

The government's unilateral decision to offer the Jarretts a refund should not moot this case any more than did the offers in *Campbell-Ewald* and *Conway*.[2] If anything, the government's offer here was more incomplete than the defendant's offer in *Campbell-Ewald*, which committed to an injunction barring it from the complained-of conduct. *Campbell-Ewald*, 577 U.S. at 158. Here, to the contrary, the rejected offer contains no prospective relief, and the government vehemently denies that its offer is an admission of liability or binds the IRS to do anything in the fu-

---

[2] The holdings in *Campbell-Ewald* and *Conway* do not turn on the distinction between offers of judgment and offers of settlement. *See Campbell-Ewald*, 577 U.S. at 183 & n.3 (Roberts, C.J., dissenting) (noting that defendant had made an identical "freestanding" offer of settlement); *Conway*, 840 F.3d at 335 (holding offers of judgment and offers of settlement are identical for this purpose).

ture. *See* Mem. (Dkt. 42) at 5 n.2. As was their right, the Jarretts rejected the government's offer, and as in *Campbell-Ewald*, their rejection leaves the parties where they were before: engaged in a live Article III controversy.[3] *See Campbell-Ewald*, 577 U.S. at 162.

The only potential exception that the Court recognized in *Campbell-Ewald* does not apply here. In concluding that unaccepted offers do not moot cases, *Campbell-Ewald* distinguished an older case involving state taxes. *See Campbell-Ewald*, 577 U.S. at 163-64 (citing *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308 (1893)). In that case, the Court stressed, the defendant "had not merely offered to pay the taxes in question." *Id.* It "had actually deposited the full amount demanded in a California bank in the [plaintiff's] name, in accord with a California statute." *Id.* at 164. The case then became moot as a function of "California's substantive law, which required the [plaintiff] to accept [the defendant's] full payment of the amount in controversy." *Id.*

This discussion does not help the government. For one, *Campbell-Ewald*'s discussion of tax cases proves that its principle *is* relevant in the tax context. More importantly, the government does not point to any federal law that "require[s]" the Jarretts to accept an offer of a refund. *Id.* No such law exists.

---

[3] In the common-law tender cases discussed by Justice Thomas in his concurrence, "a tender of the amount due was deemed 'an admission of a liability' on the cause of action to which the tender related, so any would-be defendant who tried to deny liability could not effectuate a tender." *Campbell-Ewald*, 577 U.S. at 170 (Thomas, J., concurring) (quoting A. Hunt, A Treatise on the Law Of Tender, and Bringing Money into Court (1903) § 400, at 448). So the IRS's maneuver here—tendering an offer while denying liability—would have failed under the common law too.

9

In its brief, the government cites 28 U.S.C. § 1346(a)(1). Mem. at 3. But that statute merely creates subject-matter jurisdiction over cases "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." It does not require a taxpayer to accept a refund, or even extinguish a taxpayer's claims after a refund has been offered. Statutory subject-matter jurisdiction, moreover, must be evaluated as of the time of the complaint; it does not exist and then get taken away later in the case. *See, e.g.*, *In re Lewis*, 398 F.3d 735, 743 (6th Cir. 2005). The government's suggestion that a refund offer takes jurisdiction away is just another way of saying that this case is moot. But that argument is what *Campbell-Ewald* refutes: because the Jarretts rejected it, the government's refund offer is a "legal nullity, with no operative effect." *Campbell-Ewald*, 577 U.S. at 162 (quoting *Genesis Healthcare*, 569 U.S. at 80-81 (Kagan, J., dissenting)).

Equally unavailing is 26 U.S.C. § 7422(d)—a statute that the government cited in conversations with the Jarretts' counsel but notably does not cite again in its brief. For good reason. That statute states that "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." In other words, a person can still sue for a tax refund, even if he didn't pay actually pay the tax because the IRS simply subtracted the tax from what the IRS already owed him. This statute, too, does not come close to saying that a taxpayer must accept the IRS's refund offers.

Despite plenty of time and opportunity, the government has identified no other statute that does what *Campbell-Ewald* demands. This Court should look skeptically at any statute that the government tries to cite in its reply.

The thrust of *Campbell-Ewald* is that judgments matter. Here, for example, a judgment for the Jarretts would allow them to avoid penalties when they take similar positions in future years. *See* 26 C.F.R. § 1.6662-4(d)(3). And it would prevent the government from suing the Jarretts for granting an erroneous refund in 2019. 26 U.S.C. § 7405; *see also Hotel Conquistador, Inc. v. United States*, 597 F.2d 1348 (Ct. Cl. 1979) (finding plaintiff "had a right to refuse" offer to settlement and noting that if plaintiff had accepted settlement offer, the Commissioner could still sue for recovery of refund under 26 U.S.C. § 7405) (superseded by statute on other grounds). Though the government asserts in its brief that it will not pursue the Jarretts for 2019 taxes, Mem. at 8, this "assurance" is insufficient because the law "does not leave [taxpayers] at the mercy of *noblesse oblige*." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 255 (2012) (cleaned up); *see also ACLU v. Fla. Bar*, 999 F.2d 1486, 1494-95 (11th Cir. 1993).

A judgment for the Jarretts would also protect them in other ways. Even if each tax year is technically separate, *cf.* Mem. at 5 & n.2, a ruling that tokens created through staking are not income would be a simple, cross-cutting holding of law that applies equally to all future tax years. The government notably does not state that it would ignore a ruling on that ground from this Court, or cabin it to 2019, and then tax the Jarretts all over again for 2020. And if that ruling were affirmed on

appeal (even if it was solely about 2019), then it would be binding precedent throughout this Circuit.

To even arguably moot this case after *Campbell-Ewald*, the government would have to "deposit[] the full amount of the plaintiff's individual claim in an account payable to the plaintiff, *and [have] the court then enter[] judgment for the plaintiff in that amount.*" *Campbell-Ewald*, 577 U.S. at 166 (emphasis added). Because the government will not agree to that, this case continues to present a live case or controversy—just as any other case where the defendant offers the plaintiff everything she wants but will not admit liability and accept an adverse judgment. Both the Supreme Court and the Sixth Circuit have warned against carving out exceptions to established doctrines "good for tax law only." *Mann Constr., Inc. v. United States*, No. 21-1500, 2022 WL 619822, at *6 (6th Cir. Mar. 3, 2022) (quoting *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 55 (2011)). This Court should not carve one out here.

## II. This Court Retains Jurisdiction Over the Jarretts' Claim Because The Claim Is Capable of Repetition and One of Public Importance.

Even before *Campbell-Ewald*, the caselaw already recognized that taxpayers can reject a proffered tax refund and obtain a judicial determination. These exceptions to mootness are also available to the Jarretts and defeat the government's motion.

If a taxpayer rejects a proffered refund, and the issue underlying the claim is capable of repetition and would, if the court dismissed, evade judicial review, then

the court retains jurisdiction over the case. *Church of Scientology of Hawaii v. United States*, 485 F.2d 313 (9th Cir. 1973). In the Sixth Circuit, a case or controversy continues to exist after the proffer of a tax refund if there is a "probability of immediate repetition of the issue and [there is a] public importance of a final decision." *Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204 (6th Cir. 1968) (per curiam). The Jarretts' tax liability *will* immediately be affected by this issue again under identical relevant facts, including in tax year 2020, tax year 2021, and the foreseeable future. *See* Jarrett Decl. ¶¶ 4, 5, 10, 14. And so will the tax liability of many other taxpayers (including in this District), making this a matter of pressing public importance.

The Ninth Circuit's decision in *Church of Scientology* is on point. There, the IRS denied the plaintiff's application for tax-exempt status. Objecting to the IRS's determination, the plaintiff brought a refund suit. The government attempted to moot the case by proffering a refund but without assuring the plaintiff of its tax-exempt status for future years. The plaintiff rejected the proffered refund, and the government moved to dismiss under Rule 12(b)(1). The Ninth Circuit deemed the case not moot because the government was liable to raise the issue in future years: "there is nothing in the proposed refund payment to the taxpayer of sums involuntarily paid for [the years at issue] which would have assured it that the same demands would not be made for [later years]." 485 F.2d at 316.

Noting the plaintiff's entitlement to have the underlying legal issue deter-

mined, the Ninth Circuit distinguished each case that the government relied on, explaining that:

- In *Drs. Hill*, the taxpayer was "assured of a judicial determination" from other pending cases that raised the same issue.

- In *Lamb v. Comm'r*, 390 F.2d 157 (2d Cir. 1968), further proceedings against the taxpayer were barred.

- In *A. A. Allen Revivals, Inc. v. Campbell*, 353 F.2d 89 (5th Cir. 1965), the Tax Court had made a judicial determination in that very case.

- And in *Regina v. United States*, 208 F. Supp. 137 (W.D. Pa. 1962), the one-off transaction that gave rise to the tax question would not recur and that there were "no collateral involvements upon which other difficulties to the taxpayer could hinge." *Church of Scientology*, 485 F.2d at 315-16 (citing and quoting cases).

Here, the Jarretts have at all times continued to engage in the same activity that gave rise to this case. *See* Jarrett Decl. ¶¶ 4, 5. Therefore, the same issue will recur for the Jarretts and will affect their tax liability. *Church of Scientology* correctly holds that "the possibility of a continuing recurrence of the problem was sufficient to entitle the taxpayer to have the underlying legal issue determined." 485 F.2d at 317. So too here.

The government seeks to distinguish *Church of Scientology* on the ground that there is no current IRS action against the Jarretts, but this is a rewriting of the Ninth Circuit's holding. *Church of Scientology* simply requires that an issue be

*capable* of repetition. 485 F.2d at 316. The Jarretts have demonstrated that the issue is not only capable of repetition, but in fact *will* recur for them and continue to affect their tax liability. *See* Jarrett Decl. ¶¶ 5, 10, 14. Indeed, the government appears to agree that a judgment in this case could collaterally estop it from relitigating the same issue against the Jarretts in later years. Mem. at 5 n.2 (citing *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 598 (1948)). And it notably does not say that, when the Jarretts claim that tokens Josh creates are not income going forward, the IRS will agree. It refuses to retreat from its answer to the Jarretts' complaint, where it insisted that these rewards *are* taxable upon creation rather than sale. *See, e.g.*, Answer ¶¶ 42, 43.

Further, the government obfuscates the likelihood of recurrence by suggesting that the Jarretts might have losses in the future that would preclude their ability to sue for a refund. *See* Mem. at 9-10. This baseless speculation is not correct: the Jarretts do not have losses that would preclude their ability to sue for a refund in 2020 and 2021. *See* Jarrett Decl. ¶ 14. And the suggestion that they will in future tax years after 2021 is sheer speculation.

In addition to the "probability of immediate repetition of the issue," the Sixth Circuit has also considered "the public importance of a final decision" as grounds for avoiding dismissal of an action. *Drs. Hill*, 392 F.2d at 205. A decision would be of significant public importance here. The issue is far from unique to Josh's activity in 2019; it relates to the increasingly large number of taxpayers engaging in similar staking activities. Members of Congress, from both parties, have noted the

importance of this precise question. *See* Letter from Rep. David Schweikert, et al., to IRS Commissioner Charles P. Rettig, July 29, 2020, https://perma.cc/P6YT-HA4P; Press Release of Rep. Darren Soto, Aug. 4, 2020, https://perma.cc/5CR6-S57W. And unlike in *Drs. Hill*, the Jarretts cannot look to pending litigation in other courts that will assure them of a judicial determination on the matter at hand. Jarrett Decl. ¶ 15; *Drs. Hill*, 392 F.2d at 205 ("[L]itigation raising the identical issue was in progress in both the Sixth and Tenth Circuits where no mootness defense was available to the Commissioner.").

Without a judgment of this Court, this discrete and recurring legal issue will evade review. This case is not about, say, a valuation issue that turns on specific facts, or an issue where the relevant facts may change from year to year. Rather, it concerns a discrete legal issue about which the relevant facts will not change—whether created tokens are income to the creator. If this Court dismisses the Jarretts' complaint without a legal judgment, the government will force the Jarretts to return to court year after year on the exact same issue (where, in the government's view, it holds the sole authority to moot the case again and again).

Accordingly, under pre-*Campbell-Ewald* caselaw, this Court retains subject matter jurisdiction notwithstanding the government's attempt to evade judicial review by proffering a tax refund.

The government relies primarily on *Christian Coalition of Florida, Inc. v. United States*, 662 F.3d 1182 (11th Cir. 2011) as persuasive guidance that the Jar-

retts' case is moot.  In *Christian Coalition*, the taxpayer made its income tax payments after the applicable statute of limitations had expired.  *See Christian Coalition of Fla., Inc. v. United States*, No. 5:09-cv-144-Oc-10GRJ, 2010 WL 3061800, at *4 (M.D. Fla. Aug. 3, 2010).  As a result, the IRS was required by statute to refund the amounts that the taxpayer had paid.  *Id.* (citing 26 U.S.C. §§ 6401(a), 6402(a), 6501(a), and *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995)).  The IRS could not rescind the refund.  *Id.* at *4 & n.10.

Those facts bear no resemblance to the facts here, as the statute of limitations had not run on the Jarretts for 2019 when they paid their taxes.  In *Christian Coalition*, the government offered a refund because it determined that the refund "'was *compelled* by the operation of the Internal Revenue Code'"—specifically by 26 U.S.C. § 6402(a).  *Id.* at 1196 (emphasis added).  The Eleventh Circuit noted that the case would be different if the government had granted the refund "in response to pending litigation," in order to "deprive the court of jurisdiction and without any independent basis [in the tax code] for granting the refund."  *Id.* at 1196 & n.13.  That case is this case.  The government was not required under the Internal Revenue Code to refund the Jarretts' taxes; it expressly *disagrees* with the Jarretts' position that created tokens are not income.

*Christian Coalition*, in another key difference from the Jarretts' case, stressed that the issue there—whether the plaintiff was tax exempt—was not capable of repetition because it turned on facts that would change from year to year (like how much political activity the plaintiff had engaged in that year).  *See id.* at 1196.

But here, the Jarretts raise a discrete question of law—whether this kind of transaction is income in the first place—that will remain the same in every future tax year and will not turn on changing facts. And to the extent the analysis in *Christian Coalition* cannot be squared with *Church of Scientology*, this Court should follow the latter as more persuasive.

### III. The Jarretts Have Not Been Made Whole Solely By An Offer To Repay The Refund; Prospective Relief Remains Available.

Josh Jarrett has engaged and will continue to engage in the *exact* same conduct that gave rise to this suit. The Jarretts' complaint asks for all relief that is proper. Dkt. 1 (Compl), Prayer ¶¶ A-D. Accordingly, injunctive and forward-looking relief is available for this Court to grant.

Citing the Tax Anti-Injunction Act, the government argues that "[p]rospective relief is unavailable in any refund suit." Mem. at 1, 4-5. (It also cites the tax exception to the Declaratory Judgment Act, but that statute does no extra work because it has been interpreted to be coterminous with the Tax Anti-Injunction Act. *See, e.g.*, *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 19 (D.C. Cir. 1979)). While the Anti-Injunction Act requires most tax disputes to be litigated in refund suits, it does not limit plaintiffs in those refunds suits from obtaining prospective relief.

Refund suits are beyond the scope of the Tax Anti-Injunction Act. The Tax Anti-Injunction Act applies to lawsuits "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). Refund suits do not have that purpose. *See Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)

("The manifest purpose of [26 U.S.C. § 7421(a)] is . . . to require that the legal right for the disputed sums be determined in a suit for refund."). So as the Supreme Court suggested in *Bob Jones*, a plaintiff who seeks forward-looking relief in a refund suit also lacks that purpose. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 748 n.22 (hypothesizing "that a suit for a refund is not 'for the purpose of restraining the assessment or collection of any tax . . . ,' and thus that neither the literal terms nor the principal purpose of [26 U.S.C. § 7421(a)] is applicable."). The Supreme Court's suggestion is correct. Neither the terms nor the principal purpose of the Tax Anti-Injunction Act (avoiding suits outside the avenues of review mandated by Congress) bars prospective relief in a refund suit like this one.

Defendant points again to Eleventh Circuit caselaw as persuasive authority. *See* Mem. at 5 (citing *Christian Coalition*, 660 F.3d at 1192). But the Eleventh Circuit held only that injunctive relief was unavailable after the claim for a refund had become moot. *Christian Coalition*, 660 F.3d at 1192. Here, the Jarretts' underlying refund claim is alive and well, as explained above.

Even if the Jarretts' refund claim were moot, *Christian Coalition* was simply wrong that prospective relief is not available. For starters, a suit brought for a refund is not "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). A suit's purpose is what it's "aimed at," *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275-76 (1993), and a refund suit that seeks prospective relief is aimed at getting a refund and preventing the same illegal taxation from happening again—not from prospectively stopping the machinery of the

IRS.  *Cf. United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974) (noting that prospective relief is "ancillary" in a refund suit).  The Supreme Court pre-viewed this straightforward conclusion in *Bob Jones*.  416 U.S. at 748 n.22.  As the en banc D.C. Circuit explained, "precedent demonstrates that declaratory relief and injunctive relief are available in tax refund suits." *Cohen v. United States*, 650 F.3d 717, 740 n.5 (D.C. Cir. 2011) (en banc) (citing *South Carolina v. Regan*, 465 U.S. at 373-81 & 377-78 n.16; *Bob Jones*, 416 U.S. at 748 n.22; and *Americans United*, 416 U.S. at 761-62).  And "the Government has acknowledged" before "that plaintiffs could obtain appropriate declaratory and injunctive relief in tax refund suits."  *Id.*

Preventing plaintiffs from obtaining prospective relief in refund suits also would prevent them from obtaining prospective relief in *any* suit, which would vio-late due process.  The Anti-Injunction Act's denial of preenforcement review satis-fies due process only when refund suits are "adequate." *Phillips v. Comm'r*, 283 U.S. 589, 596-97 (1931).  They are not if prospective relief is never available.  The Supreme Court has thus raised

> serious question[s] about the reasonableness of a system that forced a [taxpayer] to bring a series of backward-looking refund suits in order to establish repeatedly the legality of its claim . . . and that precluded [it] from obtaining prospective relief even though it utilized an avenue of review mandated by Congress.

*Bob Jones*, 416 U.S. at 747-48 & n.22.  At least under constitutional avoidance, the Court should not read the Anti-Injunction Act to tee up these serious questions.  *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

Dismissing this case at the current stage raises the precise due-process concerns that the Supreme Court articulated in *Bob Jones*. The Jarretts have properly pursued the exact avenue of relief mandated by Congress (a refund suit), but are (according to the government's brief) now precluded from obtaining a judicial determination based on the government's unilateral, one-time offer of a refund. And what would the government have the Jarretts do? Engage in exactly the type of series of backward-looking suits that the Court found problematic, and which raise the serious due-process concerns. *See* Mem. at 9 (distinguishing *Church of Scientology* by suggesting that the Jarretts have not yet filed "multiple" refund claims and filed multiple refund suits).

Despite the government's attempt to unilaterally settle this case, the Jarretts remain fully entitled to seek forward-looking injunctive relief. The Supreme Court contemplated this relief in *Bob Jones* and explained why the Anti-Injunction Act would not bar it. It was correct.

## CONCLUSION

For the aforementioned reasons, the Court should deny Defendant's motion to dismiss the complaint under Rule 12(b)(1).

Respectfully submitted,

/s/ David L. Forst

CONSOVOY MCCARTHY PLLC
Jeffrey M. Harris
Cameron T. Norris
1600 Wilson Boulevard, Suite 700
Arlington, VA  22209
Telephone:     703.243.9423

FENWICK & WEST LLP
David L. Forst
Sean P. McElroy
801 California Street
Mountain View, CA  94041
Telephone:   650.988.8500

J. Abraham Sutherland
104 Prospect Street
Black Mountain, NC 28711
Telephone:     805.689.4577

DATED:        March 14, 2022

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2022, I electronically filed the Plaintiffs'

Memorandum in Opposition to the United States' Motion to Dismiss, the Declara-

tion of Joshua Jarrett, and the Declaration of David L. Forst with exhibits, with the

Clerk of Court using the CM/ECF system, which sent notification to Defendant's

counsel:

> **Ryan O'Connor McMonagle**
> **Stephen S. Ho**
> U.S. Department of Justice, Tax Division
> PO Box 227
> Washington, DC 20044
> Ryan.McMonagle@usdoj.gov
> Stephen.S.Ho@usdoj.gov

Dated: March 14, 2022                          /s/ David L. Forst_____